And we'll turn to the last case on the argument calendar today, which is 22-7. Thank you. The caption now is Elisa v. The City of New York. I think this is just good afternoon, Your Honors. My name is Marcia Lowry. I'm with A Better Childhood, and we are here on behalf of the appellants in this case. May it please the Court. This lawsuit was brought on behalf of 19 children who have been in the New York City foster care system and have all been subjected to an unconstitutional risk of harm and sought class certification against a unitary system. All of these children are in the custody of the Commissioner of Social Services of New York City, and there is certainly a special relationship, a legal special relationship, between the children and the city. In addition to that, we also have sued the state agency responsible for oversight. In declining to certify the class, we believe the district court has committed legal error, and the legal error is based on two things primarily. One, the children complain of being subjected to a risk of harm because of specific practices by the city. The district court found that the children had to have actual harm, which they do not, and cases throughout this country now find that risk of harm is a constitutional viable claim when there are federal statutory and constitutional rights at issue. So the district court disregarded the risk of harm, tried to find actual harm, and that was definitely legal error. Compared to national averages, children in New York City remain in foster care longer, almost twice as long, as children in other systems. They are reunited with their parents much more slowly than in other states, and they are maltreated at far higher rates. So plaintiffs sought class certification because of specific practices by the city agency, practices that we identified and provided data on and support of. We think the district court committed error in not taking it into sufficient consideration. Those common practices are placing children without any consideration of children's needs, delegating case planning to workers who are not required to undergo mandatory training before assuming responsibility for a child. The practice of accepting case plans that are untimely and do not comply with mandated federal requirements. Can you explain that? What's the mandate? Are the federal requirements a timing requirement or a substance requirement? It's both, Your Honor. What's the timing requirement? Sixty days for a permanent plan for a child and a great deal of specificity with regard to what should be in a case plan. So you're in part alleging that they don't comply with the 60 days and that they don't give enough detail in the plan. And then they don't contain the elements that are specified in the federal statute in the child's plan. And that is something we have put in. The 60 days is after, what does it run from? What does the 60 days consist of? Your Honor, I think it's when the child enters the system, but I'm not absolutely certain whether it's then or a couple of days after. Counsel, could you deal with the judge's concern about commonality and typicality, which struck me as very common sense? Tell me why she was wrong. Well, we think that these practices are common practices. To every child that ever comes into the system. No, Your Honor. All children who are in the system are at risk of harm. This is not actual harm. This is risk of harm. And many, many courts have certified classes, not many, many, but several courts, and two different circuits have certified classes based on the risk of harm. That's also a statement. But you do allege, just to make sure, you do allege that the practice is common to every child. It is common to every child. In other words, there are no criteria for common practice one. There are no criteria for placing them. You allege that's common to everybody. That's right. They may not all be harmed by that, which is not required. It's just required that they have an unreasonable risk of harm. Exactly, Your Honor. Exactly right. Similarly, there are no mandated training requirements, and the city places children with. . . And that's common to everybody, right? Exactly, Your Honor. Exactly. There also, with regard to case plans and deficient case plans, that is also common to everybody. And the lack of permanency planning, which is required by a federal statute, is also common to everybody. We introduced a great deal of evidence to support the commonality of these practices. Took the depositions of agency heads and also of city officials to show that, in fact, these are common practices. There's not a lot of dispute except that the court viewed it from the other angle. The court looked to see how children were harmed and what the consequences were. The consequences are in the national data that shows that New York City is really an outlier with regard to children and how they're being treated. Did you want . . . I'm sorry. No, that's fine. Okay. Similarly, we proposed remedies that would address these common practices. Remedies that are available to all of the children, not individualized remedies, but basically class-wide remedies. For example, there is no mandatory training. We have proposed as a remedy that the city agency develop training programs and then monitor the agencies to ensure that before a worker takes a case, they have the mandatory training. Similarly, with regard to placement of children, there needs to be a practice of considering individual children's needs before the child is placed with a particular agency. There needs to be a match. Right now, children are assigned essentially, as far as we know, at random, and that is critically important for a child, that the child be appropriately matched with an agency. Some of the children were matched with people who didn't even speak their own language. Other children had special needs, and the foster family wasn't, in fact, equipped to deal with the special needs of the child. Ms. Lowry, you state in your papers that the district court committed reversible error, and you also say that the order should be vacated. Specifically, what relief do you want from us in these circumstances? We want the court to find that risk of harm is a specific constitutional violation and to ask the court to reconsider its decision because we do think there are both errors of law. You're not asking us to find that the class is properly certified. You're just asking the judge to reevaluate it under what you think is the proper standard. Yes, Your Honor, that's right. In fact, this case implicates whether or not a class action decision that this court, the Second Circuit, issued a number of years ago, the Marisol decision, is still good law, and we believe it is still good law, and the district court saying it was not good law based on one district court decision was improper. And Marisol was a case in which the Second Circuit decided the case before Wal-Mart and did not have the opportunity to obviously consider some of Wal-Mart, which is applicable to this case, some of which is not applicable at all to this case. But we think that all needs to be... And if we find that the risk of harm is in all cases, that deals with the commonality. Yes, Your Honor. Yes, it does. It does. Instead, the district court focused on the consequences, how it plays out in individual kids' cases. We're not challenging any individual child's case, any determination from an individual child. What we're challenging is we think that we have a proper class. Can I just ask not a law question? In order for the Department of Child and Family Welfare to do this job correctly, as you would hope, wouldn't that involve many more staff? Aren't they understaffed in terms of doing all of this? Of course, I'll ask the government respondents as well. Your Honor, I think there's nothing more important, I'm sure the court would agree, than the lives of children, and many children who are coming through this system are being deprived of the benefits of the Constitution and of federal law. Even if I agree with what you're saying, is it up to us to put this burden on the fist of the city? Your Honor, I think that the law is that lack of funding is not a defense to a constitutional violation, and we think that if this class is certified and we can go to the merits of the case and prove our case, we're going to show a constitutional violation. New York is a real outlier in terms of the outcomes it provides to children in the foster care system. Other states can do it. This state can do it as well. Thanks very much. Thank you. Next slide. Mr. Davies. May it please the court, my name is Jameson Davies for the city. The district court did not abuse its discretion in twice declining to certify a disparate class of all the children who now or ever will be in foster care based on an amorphous theory that they're all subject to an increased risk of harm based on alleged departures from ACS practices, none of which they can causally link to any constitutional harm. Plaintiffs failed to carry their burden of showing that the class meets rule 23. Those are merits type determinations. This is whether or not this is a proper class certification of the commonality, whether or not ultimately they could show what causes it. Let me read you a sentence from the district court's opinion. I think it's incorrect legally and factually, and I want you to explain to me what I'm missing. The district court said plaintiff's allegations do not flow from unitary, non-discretionary policies that violate the rights of all class members or cause them all injury. So legally, this is, and the amicus briefs also focus on this, it's wrong to say that if it doesn't cause them all injuries that therefore it's not properly certified. You would agree that that's not correct. If it's an unreasonable risk of harm, even if it doesn't cause injury to all children in the system, it would still be commonality, right? We don't think that this court specifically has held that risk of harm is sufficient for this type of substantive due process claim. But even taking that framing, the question is- The city of New York's taking a position that if every child, if it doesn't cause injury to all children, that it's not properly certified under the commonality requirement? Is that the city of New York's position? I would say that that hasn't been squarely held by this court, but I don't think it's necessary to reach that because you have to prove under Walmart, and this is quotes from Walmart, you have to prove that there are, in fact, common questions. You need significant- All right, so that's, the district court said there were no unitary policies that they're questioning, and I'm going to take the two that I think are the easiest to understand. The practice, and both were referred to, the practice of making foster care places without considering the children's individual needs. In other words, no criteria. Let's say, as she suggested, let's just say it was random. Can't that, you don't have to look at each individual child. That's the policy. The policy is we randomly assign children without knowing whether an English child is going to, a Spanish-speaking child is going to an English-speaking family, or whether or not the child has special medical needs and that the family can accommodate. None of those things are being considered. Are the families supposed to say the language of the child? Right. So, isn't that a unitary policy that a court could say is either problematic under federal or state law, or is okay under federal or state law? So the issue is that they have to prove that that's a policy in common to the class, and they have not proven that there is that, in fact, random policy. To just take their example, the reason that the children were assigned to the family that didn't speak Spanish was there were a range of children who all wanted to be placed together, and there was no Spanish-speaking family that could accommodate them. They don't get a chance to prove it until the class is certified. They're alleging a common practice, and they want discovery to determine whether or not that's, in fact, going on or not. Well, they've had substantial discovery, and I think this gets into the exact Wal-Mart case, which is basically they alleged a harm in the form of discriminatory lower pay. They were given the opportunity to prove, they need significant proof, that that was the existing actual policy that they could then challenge on it. No, the problem with Wal-Mart was the only policy they were alleging, the policy was allowing discretion to local supervisors over employment matters, and the Supreme Court said that can't be, because if you're asking a court to examine what happens if you allow discretion, a million things can happen. So there was no policy other than a non-policy. Here, I just gave you one. Let's talk about training. Why isn't training a unitary policy that could either violate federal and state law or not? They're saying that there's no training for case workers. Why isn't that something that is perfectly suited for class determination, that, as Wal-Mart said, could be resolved with one stroke, either yes or no? It's either legal or illegal. Well, yes, so that's the issue exactly. The common question can't just be is there this policy that there's no systemic requirements for training. It has to be is that a common policy that they have shown that's going to drive the resolution of the ultimate question, which is whether or not there is a substantive due process violation here. Their argument is if there's no training at all, it creates an unreasonable risk of harm. If the case workers aren't trained at all, it creates an unreasonable risk of harm to the children. Respectfully, Your Honor, that's actually not what they're arguing. They're saying that there is no particular system of training that has to be accepted. There's actually training, and it varies among the 26 different contract agencies, and this is another reason why the class is not sufficiently common, because each con- Well, the agency is not complying with the 60-day requirement, timing requirement. They're well on that deadline. Why isn't that a unitary policy that could be challenged? Because that's not every case. Essentially, they're saying that they are departures from policy. They're isolated and random sort of departures from meeting the deadlines and things like that. That's not a sufficiently common question to the class. There has to be a question that's going to drive the resolution of the ultimate claim, the ultimate substantive due process claim. So if 70% of the time it's not being complied with, you can't have class action over that? I mean, there would have to be sufficient proof, like Wal-Mart says, that there is this policy that they're all subjected to and that the resolution of whether that policy exists would drive the resolution of the ultimate claim. And I think the evidence, they basically have gone by 21 case studies. There's no systemic evidence. In Wal-Mart, you had anecdotes plus statistics, and that still wasn't even sufficient. How would you describe the evidence before Judge Wood in these circumstances? The evidence essentially was the expert report by their expert, which analyzed the case files of some of the named plaintiffs. These were by affidavits? It wasn't actually by affidavit. It was basically an expert report that had gone through the case histories of the named plaintiffs and explained why she thought there were departures. Was there anything akin to an evidentiary hearing? I'm not certain. I'm not suggesting there should be, but I'm just wondering if there was. I don't believe that there was. I don't want to represent that for sure because I'm not 100% certain, but I don't believe that there was an evidentiary hearing on these issues. So whatever facts were before Judge Wood in these very preliminary stages of these proceedings was in written form? Correct. I wouldn't say that they were preliminary. They had years and years to do discovery. They generated thousands and thousands of pages of discovery. I mean, you've seen the record. It's 3,000-something pages long. They had the opportunity to show that these were, in fact, policies that they could challenge on a class-wide basis. And they didn't- You're really departing from what the district court said. The district court didn't say they didn't establish enough evidence that these policies exist. The district court said that they didn't allege a policy that was common. This is an entirely different approach than what the district- This is not the analysis that the district court made. Well, I was doing- In response to your questions, I was getting into that. I think you can still affirm on that basis of the district court's decision that they didn't actually allege policies that were sufficient. They alleged departures from policy. If you look to their report, the six common themes that they alleged were all under the heading of departures from policy. And so isolated departures from policy are not the kind of glue that can hold a class together. No, they're not suggesting isolated. They're suggesting systemic departure from law. The policies that are being used are departure from federal and state law. I think that's what they're alleging, right? Actually, I don't think none of the four things that they give as their common practices are actually legal requirements. And the court dismissed most of their statutory claims. And the statutory claims that survived that the court found were required by federal law. The failure to have any criteria when you're placing children violates 42 U.S.C. Section 675A and New York Code Section 430.11. Yeah, and if you look to the statutes they cite, they don't say basically that that is a requirement, that what they're alleging is actually a requirement. And the district court dismissed the statutory claims under those same subsections saying that they were entitled to that relief, to that kind of implementation of the case plan. So there's already been a finding that that's not a federally required statutory duty. All right, we'd like to give an opportunity to Ms. Brody to argue. We thank you. Thank you, Your Honors. We urge you to affirm. Go ahead, Ms. Brody. Thank you. Elizabeth Brody for the State Defendant. The district court did not abuse its discretion in finding that these particular plaintiffs had, for a second time, failed to meet their burden to certify a sweeping class of all children who are and will be in foster care. I'll start with commonality. The plaintiffs here identified no uniform policy or practice that the State Defendant engages in, let alone a policy that could be considered the driving force behind the class member's injuries. Instead, with respect to the State Defendant, they identified only a single, exceedingly broad, common question of fact, whether OCFS, the Office of Children and Family Services, effectively exercises adequate and meaningful oversight over ACS and the contract agencies. But this circular question is incapable of producing a common answer to the crucial question of why any particular child in care was denied or was at risk of being denied permanency or well-being. Plaintiffs- Why is that? Why do you say it's impossible of discerning the answer to that question? The question is so broad, and the individual plaintiff's circumstance is so different, that how, at trial, how would it be productive to litigate the claims of all of these 19 plaintiffs? Because if they have no criteria for placing children, zero criteria, they put their names in a box and they pick out a name. We're going to place this child at, let's just say that's what's going on. Why isn't that a class commonality question? And that if the state, if in fact that's going on, the state is supposed to be overseeing the city and is allowing the city and the contracting agencies to do that, why wouldn't the state potentially also have a problem? So, Judge Bianco, putting names in a hat, or as plaintiff's counsel said, essentially, as far as we know, at random, that is not what's occurring. That is not what the evidentiary record shows what's occurring. That's not what multiple deponents from the voluntary agencies and the city told them was occurring. Even setting aside that there's now a software in place to do that, even before, and I'm happy to provide record sites, there was a process in place whereby- What we're talking about is whether there should be a class. The district court is well equipped to look at the evidence of all these different things and decide whether or not there's a violation of law or not, based upon what the facts are. But what the district court here did was not certify the class, saying that there are no common questions. I'm having a hard time understanding how that's not a common question. Well, if there were, in fact, no assignment system, no system of matching children with foster care agencies or foster care parents, certainly that would be a common policy. But that's not true, and after two and a half years of discovery, and again, I'm happy to give record sites- So you think they do try to match the child to the foster parents? Yes. Multiple voluntary agency persons who were deposed, as well as the city, said that the process is they would intake the child. There's a dedicated unit at ACS that intakes the child, the child's age, gender, whether the child has siblings. They talked about being in the same city district, geography and proximity to the birth parents. These are all things that were considered in matching both with a voluntary agency and with a foster parent. I could also submit a letter following argument with these sites, if that would be helpful to the court. Do they ever assign a child to a family that doesn't speak the language that the child speaks? That can occur. It did not occur in all of the named plaintiff's cases, and again, that's why it's hard to- But how could that occur if you talk about matching? How could that ever occur? So even plaintiff's own experts said, quote, it may be understandable that in certain unusual circumstances, such as when the child is removed from their home on an emergency basis- sorry, that was me editorializing- the quote continues, a child may be placed into a safe home without a matching process. And for the example they provide in their brief, the TC children, how could these children who speak Spanish, how could they be assigned to an English-speaking home? That's not the result of some unitary policy of throwing these children's names into a hat and pulling it out and being like, oh, I guess you're stuck with English-speaking parents. Those children, I think they were ages zero to six. I may have the oldest child wrong, but it was four siblings. And the reason they were placed with an English-speaking resource is because that was the way they could be kept together. There is evidence in the record that that particular voluntary agency did not have a home that could accept four- So the agency was not unaware of the difficulty, but tried to manage it because of other issues. Yes, and again, as your honors were asking, if in fact there were no matching policy whatsoever, then that would be a unitary policy. But here, and in fact, the way their expert framed the issues was that there were certain departures from best case practices. And that's not something that's capable of being litigated on a common level. Can I ask a quick question about the Fifth Circuit case, MD? I'm having a hard time understanding how this is distinguishable, where the Fifth Circuit found that a class was properly certified, where the allegations were that the state's policies with respect to case load management, monitoring, and oversight created unreasonable risk of harm to the class. Isn't that precisely the type of allegations we have here? So it's my understanding in MD that the Fifth Circuit did not actually reach the question of class certification because the state defendant missed the deadline? Well, it found it partially waived, but then it said, we understand the state to be primarily arguing that certification was improper because the class members have not been harmed in essentially the same way. And then it said what I just said, that because they're alleging monitoring and case load management and oversight, which are common policies, it was properly certified. So I understand what you're saying, but it clearly concluded that commonality was met, right? So with respect to the state defendant, the common allegation is, again, whether there's effective, adequate, and meaningful oversight, there's no other common practice alleged. MD doesn't really go into the commonality of a question of monitoring, but it does discuss in quite upsetting detail, frankly, how case loads and worker turnover are affecting each member of the class or putting them at risk. And what's different about that case and this case is that in MD, all of the named plaintiffs showed that by being in a system where they were assigned to an overworked foster worker or they were likely to have multiple case workers seeing their case, they were likely to be seen by what are called ICU workers who were not trained, whose job was literally to go to the house, make sure the kid was there, and come back, that they were at risk of harm. But these are 19 plaintiffs who plaintiff's counsel, through a hotline, collected the stories of individuals who were dissatisfied with the foster care system. That was the inquiry. And then they attempted, like the Walmart plaintiffs, to string together these very different experiences. And with respect to the state, they're saying, well, the thing that these 19 very different plaintiffs have in common is that the state doesn't adequately supervise the system. But that- The district court obviously made extensive findings of fact, right? In reaching its decision on class certification. Yes. There was no evidentiary here. These were all on papers, as they say, right? That's correct. What is our standard of review in these circumstances? How do we, in what way do we review district court's findings of fact? So the standard for reviewing decision on class certification is abuse of discretion. And a component of that is that this court reviews factual findings for clear error. And I do want to emphasize that the plaintiffs here, when they talk about things like the typicality analysis, they actually haven't challenged at all, clear error or otherwise, any of the court's factual findings, such as these plaintiffs were in foster care for much longer than other children. I just want to- I know I'm well over time, but if I could just make one- Go ahead. One point. The plaintiff's reliance on Marisol A. is also misplaced. It's critical to remember that this court in Marisol A. affirmed certification only on the condition that the class be broken into subclasses on remand. This court noted that the class in Marisol A. was, quote, near the boundary of the class action device and, quote, stretched the notions of commonality even before Walmart. Here, two different district court judges, Judge Swain and then Judge Wood, reached the same conclusion, namely that the class was simply too broad. Thank you. We'll hear from Ms. Lowery, who is reserved two minutes. Thank you. Your Honor, the district court issued a 24-page decision with basically no findings of fact. We introduced evidence from a range of people. We introduced an expert report, yes, but we also introduced documents from the city, more than about 150 documents showing the fact that there are practices that are in effect now. Don't affect 100% of the kids, but affect all the children equally. They're all at risk of harm. We put in evidence from various agencies. We're talking who have different practices. Some of them didn't know about the training requirements. Some of them did. Some of them gave the workers cases when they hadn't been trained. We're talking about the policies and practices of the city agency, not the private agencies. We don't make any allegations at all about individual variations. We make allegations about city practices, and that's what we're talking about. In our reply brief at page 24 and 25, we cite to the federal statutory claims that have survived, not been dismissed. We cite placement evidence at pages A06-3740, A06-3437. That's training evidence. Case planning at A06-40 to 46. Permanency planning at A06-46 to 51. We put in evidence of these practices. You have no doubt that the district court had as much as it required to make findings of fact. Is that right? They did have the evidence. I ask that only because I'm wondering whether you're asking us, as part of a remand to the district court, to conduct any kind of hearing or enter some kinds of findings. Your Honor, what we've asked for is a remand. I think this court could also simply reverse the district court's ruling because it was not based on the evidence that was presented. And what is the remand order that you think we should enter in these circumstances? Your Honor, I think you should enter an order certifying the class. You want us to certify the class. Well, either that or direct the district court to do so. The district court did not take into consideration all of the facts that were presented showing the class-wide risk of harm. I asked you that question like five minutes ago when you told me you're not seeking to have us direct that the class be certified. That's right, Your Honor. You just want the district court. Yes, you're right, Your Honor. Yes, thank you very much. You're right, sir. We appreciate your arguments, all three of you. Thank you very much. Thank you, Your Honor. We'll reserve decision and we are adjourned. Court is adjourned.